**David X. FONTAINE,
Petitioner-Appellant,**

v.

**UNITED STATES of America,
Respondent-Appellee.**

No. 74–1378.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 9, 1975.

Decided Dec. 8, 1975.

Certiorari Denied March 22, 1976.

See 96 S.Ct. 1476.

Martin A. Tyckoski, Flint, Mich. (Court-appointed), David X. Fontaine, pro se, for petitioner-appellant.

Ralph B. Guy, Jr., U. S. Atty., Michael Gladstone, Detroit, Mich., for respondent-appellee.

Before PHILLIPS, Chief Judge, and CELEBREZZE and PECK, Circuit Judges.

PHILLIPS, Chief Judge.

In *Fontaine v. United States,* 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973), the Supreme Court vacated the judgment of this court and remanded to the end that David X. Fontaine be afforded an evidentiary hearing on his petition to vacate sentence pursuant to 28 U.S.C. § 2255.

Chief District Judge Frederick W. Kaess, who imposed the sentence after Fontaine entered a plea of guilty, had denied the motion to vacate. This court had affirmed. Thereafter, in obedience to the mandate of the Supreme Court, this court on May 10, 1973, entered an order vacating the judgment of the District Court and remanding the case to the end that Fontaine be afforded a hearing on his petition.

The hearing on remand was conducted before District Judge Damon J. Keith, who appointed new counsel for Fontaine and conducted a thorough evidentiary hearing.

Fontaine was arrested on October 21, 1969, by Detroit Police officers acting upon information that he had participated in the commission of a bank robbery. Detroit Police advised Fontaine of his constitutional rights and interrogated him for approximately one hour at police headquarters on the night of October 21, 1969. No confession resulted from this interrogation. Fontaine then was taken to a hospital. On October 24 a Detroit police sergeant and two FBI agents visited him in the hospital. He was informed of his constitutional rights and refused to sign a waiver form. One of the FBI agents then produced evidence linking Fontaine to a number of recent

bank robberies. Fontaine pointed himself out in several photographs of bank robbers taken by bank cameras. He was told that his fingerprints were found on two of the demand notes. He thereupon confessed to bank robbery.

On November 13, 1969, Fontaine was arraigned before Chief Judge Kaess and entered a plea of guilty. After questioning Fontaine in accordance with Fed.R. Crim.P. 11, the court accepted the plea and imposed a sentence of twenty years.

In his original motion to vacate, Fontaine contended that his guilty plea was induced by a combination of fear, police tactics and illness, including mental illness. At the evidentiary hearing, Judge Keith permitted him to present additional grounds in support of his motion.

In a comprehensive opinion rendered December 28, 1973, Judge Keith denied the motion to vacate sentence, holding that: (1) Fontaine's plea of guilty was made voluntarily and intelligently; (2) that Fontaine's waiver of counsel was valid; and (3) that since his guilty plea was voluntarily and knowingly given, Fontaine was without standing to attack his guilty plea on the ground that his arrest was illegal.

### I.

Judge Keith made a finding of fact that the overwhelming evidence against Fontaine prompted his confession and that coercion by police officers was not a factor.

As to the voluntariness of the plea of guilty, Judge Keith made the following findings:

Two days after being released from the hospital in good condition, petitioner was arraigned on state charges. From this time until February 1970, petitioner was very cooperative with the police and FBI. He freely discussed the robberies committed by him and others in his gang. Detroit police were able to close forty files as a result of this cooperation. Sergeant Cowie apparently established a close relationship with petitioner during this time, helping petitioner out of jail once to talk to his family, and bringing toys to his children at Christmas time. Thus, it was, that petitioner was arraigned on federal bank robbery charges on November 13, 1969. Agent Goeddel testified that there was never any question but that petitioner would plead guilty, waiving counsel and indictment. It was simply expected that this was in the natural course of petitioner's cooperative attitude. On the day of the plea, Goeddel could see no visible physical or emotional problems in petitioner. He was coherent and capable of understanding what he was doing. He was not coached by anyone as to what to say to the trial judge. This amicable relationship continued throughout a subsequent stay in the hospital, during which time he was treated primarily for pain from the gunshot wound and for convulsive disorders which stemmed from a gunshot wound to the head which he had received when attempting to flee the police in 1962. After his discharge from the hospital on January 6, 1970, having made a smooth recovery, he testified voluntarily before the grand jury concerning the activities of his fellow robbers. Petitioner has claimed that he went before the grand jury because he was told that if he did not, he would receive a stiffer than deserved sentence. This claim is not borne out by the testimony.

Sometime in February, petitioner ceased cooperating with the government. It has been suggested that this abrupt change stems from the fact that Florida authorities informed petitioner that they had placed a detainer on him for a parole violation. Another factor which may have affected petitioner's attitude is the fact that he was sentenced on February 13 to a twenty-year term.

Several things should be apparent from this brief description of the facts surrounding petitioner's arrest and subsequent guilty plea. The arrest made by Detroit police on the night of

October 2, 1969, had to have been an extremely unnerving experience. Were this arrest to have been followed up by similar violent tactics, it would be an easy conclusion for this Court to decide that the guilty plea was the product of fear and coercive police tactics. But, it is equally apparent that once the arrest had been made and the interrogation carried out at police headquarters, petitioner was placed in the more peaceful confines of a hospital, and his relationship with the police became one of cooperation shortly thereafter. There was no need for the FBI to extract a confession from petitioner. There was overwhelming evidence—photos, fingerprints, eyewitness identifications, testimony of an accomplice—which linked him to the bank robberies. Thus, petitioner's plea was not coerced by police tactics, but was rather the product of an awareness that the case against him was very strong. It is not doubted that petitioner feared the police, as he claims, but it appears that this fear was evoked because petitioner had broken the law and feared the consequences. Nor does it appear that petitioner's illness weakened his will or caused him to confess. At the time of the plea, he had been out of the hospital for over two weeks. There has been no testimony which suggests that petitioner was not mentally and physically able to give an intelligent and voluntary plea. Thus, petitioner's claims, other than those which arise out of the arrest and which are basically undisputed, are contradicted, not only by the government's witnesses, but by reasonable inferences surrounding the entire matter.

Petitioner has also claimed that he did not understand fully his right to counsel. It has already been determined that the right was acknowledged at the time the plea was accepted. It is now obvious that petitioner was informed of this right several times prior to the plea and that he had an extensive prior criminal background. The Court is convinced that the petitioner was aware of his right to counsel, and that waiver of this right was effected, as was the giving of the guilty plea, as a part of petitioner's cooperation with the FBI and Detroit Police.

Petitioner, in his motion to vacate, claimed that he was mentally ill at the time of the plea. No evidence was produced which bears on this claim, other than that which would support the opposite conclusion. Thus, the claim lacks merit. Similarly without foundation is the claim that petitioner pleaded guilty to the wrong bank robbery.

These findings of fact of Judge Keith are not clearly erroneous, Fed.R.Civ.P. 52(a), but are supported by substantial evidence.

## II.

▮ Relying on *Boykin v. Alabama,* 393 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), Fontaine contends that his guilty plea was invalid because Chief Judge Kaess did not enumerate each constitutional right waived thereby and elicit separate waivers as to each. ◊

We agree with the other Circuits that have passed on this question that *Boykin* does not require separate enumeration of each right waived and separate waivers as to each. *Todd v. Lockhart,* 490 F.2d 626, 628, n. 1 (8th Cir. 1974); *United States v. Sherman,* 474 F.2d 303, 305 (9th Cir. 1973); *Stinson v. Turner,* 473 F.2d 913, 915–16 (10th Cir. 1973); *Wade v. Coiner,* 468 F.2d 1059 (4th Cir. 1972); *United States v. Frontero,* 452 F.2d 406, 415 (5th Cir. 1971).

In *Roddy v. Black,* 516 F.2d 1380, 1383 (6th Cir. 1975), this court held that *Boykin* requires that no guilty plea be accepted without an affirmative showing that it was intelligent and voluntary.

We agree with the District Court that this requirement was met in the present case.

### III.

Finally Fontaine contends that his arrest was illegal and, therefore, his subsequent plea of guilty was invalid. We agree with the District Court that this contention is without merit. *Duhart v. United States,* 476 F.2d 597 (6th Cir. 1973).

Affirmed.