925 F.2d 1466
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Victor E. DOYLE (90-3295), Timothy McLester (90-3457),
Defendants-Appellants.
 Nos. 90-3295, 90-3457.
 United States Court of Appeals, Sixth Circuit.
 Feb. 20, 1991.
 
 Before MILBURN and RALPH B. GUY, Jr., Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants Victor Doyle and Timothy McLester appealed their convictions after pleading guilty in the district court.[1] Since both Doyle and McLester were originally charged in the same indictment, these appeals were consolidated, although the defendants raise different issues. The facts common to both defendants are as follows:
 
 
 2
 MR. WILSON [Assistant U.S. Attorney]: Your Honor, if we proceeded to trial on this matter, we expect that the evidence would show that [McLester], along with the two Co-Defendants, Doris Elaine Watkins and Victor Doyle, in August of last year, specifically the date being August 17th of 1989, were at the Whittier School in Lima, Ohio, in the late afternoon and early evening hours. At that time an undercover police officer who was in the Whittier School observed [McLester] and the two Co-Defendants cross Reese Street onto the school property and then observed specifically Doris Elaine Watkins and Victor Doyle engage in transactions whereby they gave crack cocaine to individuals and in turn received money for that crack cocaine. [McLester] was present at that time. Doris Elaine Watkins would testify that she along with [McLester] and along with Victor Doyle were all three in the process and in the business of selling cocaine at that time and made several such transactions. After the three individuals got up and crossed Reese Street, several units arrived at that time, the officer saw bags in the hands of the Defendants, at that time the officers converged and three bags, each of which contained quantities of crack cocaine, were found in the immediate vicinity of each of the three Defendants. In substance, your Honor, that would be, the proof in this matter.
 
 
 3
 (Supp.App. at 27-28).
 
 
 4
 We first consider the issues on appeal raised by defendant Doyle.
 
 I.
 
 5
 Doyle's guilty plea resulted in a sentence of 120 months. Doyle's sentence was governed by 21 U.S.C. Sec. 841(b)(1)(B), which provides:
 
 
 6
 (B) In the case of a violation of subsection (a) of this section involving [more than five grams of cocaine base] such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years ... If any person commits such a violation after one or more prior convictions [for felony drug violations], such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment....
 
 
 7
 Since Doyle has a previous felony drug conviction, the ten-year minimum sentence was applicable to him. This is exactly what the court imposed. Doyle argues, however, that his sentencing range under the federal sentencing guidelines was 97-121 months. This argument overlooks the fact that statutory minimums control if in conflict with the guidelines. The guidelines themselves recognize this fact:
 
 
 8
 Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.
 
 
 9
 U.S.S.G. Sec. 5G1.1(b). The defendant is simply wrong in his contention that the guidelines control this situation.
 
 
 10
 Defendant Doyle's second argument on appeal is also disposed of as a result of the statutory minimum sentence that the court was required to impose. Doyle contends that he should have received a reduction in his sentence because he was only a minor participant in the offense. Whether in fact Doyle's role was minor or not is immaterial, since the court imposed the minimum sentence authorized by law and no reduction was possible.
 
 II.
 
 11
 Before discussing the legal issues raised by defendant McLester, some additional background is necessary. At arraignment, McLester pleaded not guilty. Later, on March 6, 1990, with counsel present, McLester entered a guilty plea to both counts of the indictment. A presentence report was ordered and submitted to McLester and his attorney on April 10, 1990. On April 19, 1990, defense counsel, on instructions from McLester, filed a motion to withdraw the guilty plea. The only reason offered by McLester was that "he [did] not want to proceed with the plea as entered." The district court denied the motion, and McLester subsequently received a 97-month custody sentence.
 
 
 12
 On appeal, McLester argues that his guilty plea was not an effective waiver of his constitutional rights, as it was not intelligently made, and that the trial judge erred in denying his motion to withdraw the guilty plea. We discuss these contentions seriatim.
 
 A. The Guilty Plea and Rule 11 Compliance
 
 13
 Federal Rule of Criminal Procedure 11(c)(1) provides in relevant part:
 
 
 14
 (c) Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
 
 
 15
 (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense....
 
 
 16
 Defendant argues that the court did not specifically inform him that it could depart from the guidelines. Although defendant is correct in his assertion, we find no error requiring reversal for three reasons. First, the court did not, in fact, depart from the guildelines. The guideline range for McLester was 97-121 months, and he was sentenced to 97 months. The reason a defendant must be informed of the right of the court to make a departure is so that he will not be taken by surprise if and when a departure is made. Although literal compliance with Rule 11 is the best practice, we find no prejudice occurring to the defendant here.
 
 
 17
 Second, Rule 11 itself provides that "any variance from the procedures required by this rule that does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 11(h). This amendment had the effect of overruling McCarthy v. United States, 394 U.S. 459 (1969), which decision prohibited the application of a harmless error analysis to Rule 11 violations. As we stated in United States v. Stead, 746 F.2d 355, 356-57 (6th Cir.1984), cert. denied, 470 U.S. 1030 (1985):
 
 
 18
 The adoption of this recent amendment to Rule 11 alters the approach this Court must now use in reviewing guilty pleas. Prior to the enactment of Rule 11(h), this Court addressed challenges to Rule 11 guilty pleas in two ways. Where the guilty plea was the subject of a collateral attack, substantial compliance with Rule 11 was sufficient. United States v. Timmreck, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979); Fontaine v. United States, 526 F.2d 514 (6th Cir.1975). Strict compliance with Rule 11 was required by this Court where the guilty plea was being reviewed on direct appeal. See, e.g., United States v. Stanton, 703 F.2d 974 (6th Cir.1983). Since Rule 11(h) requires reversal only where substantial rights have been affected, the substantial compliance standard will now be used by this Court on direct appeal as well as collateral attack.
 
 
 19
 We conclude that if there was error, it was harmless as a matter of law.
 
 
 20
 Third, although the court never used the word "departure," it did fully explain to the defendant the penalties to which he was exposing himself:
 
 
 21
 THE COURT: Do you know what the maximum penalty is on these two charges?
 
 
 22
 THE DEFENDANT: 10 to life.
 
 
 23
 THE COURT: Pardon?
 
 
 24
 THE DEFENDANT: 10 to life.
 
 
 25
 THE COURT: Well, on count one the, the maximum term of imprisonment is from five years to 40 years and on count number two, the imprisonment is anywhere up to life imprisonment, so you do understand that entering a plea of guilty to these counts lays you open to being sentenced to life imprisonment? You do understand that?
 
 
 26
 THE DEFENDANT: Yes.
 
 
 27
 THE COURT: There's also a fine involved, do you know the amount of fine that's involved in this matter?
 
 
 28
 THE DEFENDANT: Two million on one count and four million on the second count.
 
 
 29
 THE COURT: That's right, so that what, what that means in essence is that if I accept your pleas of guilty this morning, if I wanted to, without either of us moving from right where we are now, I could sentence you to 40 years imprisonment plus life imprisonment and fines of two million dollars plus four million dollars and [o]rder, tell the United States Marshal to take you off to prison to start serving that long imprisonment and the District Attorney to see what he could do towards collecting the money from you, you understand that?
 
 
 30
 THE DEFENDANT: Yes.
 
 
 31
 THE COURT: So knowing what you're exposed to, is it your desire of your own free will and accord to enter this plea?
 
 
 32
 THE DEFENDANT: Yes.
 
 
 33
 (Supp.App. at 23-24). Since the defendant acknowledged that he could receive a life sentence on top of a 40-year sentence, there is not much left in the way of upward departures to be discussed. The court clearly put before the defendant the "worst case" scenario, which exceeded by far the guideline range.
 
 B. Withdrawal of the Guilty Plea
 
 34
 We review a district court's denial of a motion to withdraw a guilty plea under an abuse of discretion standard. United States v. Spencer, 836 F.2d 236 (6th Cir.1987).
 
 
 35
 Federal Rule of Criminal Procedure 32(d) provides:
 
 
 36
 (d) Plea Withdrawal. If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. 2255.
 
 
 37
 As we stated earlier, the only reason given by McLester for wanting to withdraw his plea was that he changed his mind. That change of mind occurred after McLester saw the presentence report, which recommended that no reduction be given for acceptance of responsibility--a recommendation that the district judge followed.
 
 
 38
 McLester apparently was disappointed by the fact that his plea bargain had provided that the government would not oppose a reduction for acceptance of responsibility.[2] The government lived up to its word, but the court was free to follow the recommendation contained in the presentence report. In this regard defendant argues that, if the court did not follow the "recommendation" of the government as to defendant's acceptance of responsibility, the court was duty bound to allow the defendant to withdraw his plea. On this point, defendant relies on Federal Rule of Criminal Procedure 11(e)(1)(B), which provides:
 
 
 39
 (e) Plea Agreement Procedure.
 
 
 40
 (1) In General. The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:
 
 
 41
 .............................................................
 
 
 42
 ...................
 
 
 43
 * * *
 
 
 44
 (B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court....
 
 
 45
 Defendant then argues that this was a Rule 11(e)(1)(B) plea agreement and that subsection (e)(2) provides in relevant part: "If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea." Fed.R.Crim.P. 11(e)(2). The trial judge did not tell the defendant anything about his having no right to withdraw his plea. However, it does not follow, as defendant seems to suggest, that the consequence of the court's failure to tell him he could not withdraw his plea is to somehow bestow upon him an absolute right to withdraw his plea. If there is a consequence flowing from the court's omission it would be to invalidate the plea ab initio.
 
 
 46
 We conclude, however, that whatever error occurred in the court's omission was harmless as a matter of law. Fed.R.Crim.P. 11(h). The defendant was not misled in any way. As promised, the government neither recommended nor opposed a two-point reduction for acceptance of responsibility. Furthermore, the consequences of the government's promise was made clear at the time the plea bargain was discussed:
 
 
 47
 MR. WILSON [Assistant U.S. Attorney]: We have represented to the Defendant that we would not seek an upward departure with regard to this Defendant based upon any factors that are not taken in consideration by the Sentencing Guidelines and in addition we have indicated that we would not recommend the, or would not oppose the Defendant receiving acceptance of responsibility pursuant to the Sentencing Guidelines.
 
 
 48
 THE COURT: In other words, there's, there's nothing in the agreement that would, that would affect the court's determination or the application of the guidelines to the sentence that's to be ultimately imposed?
 
 
 49
 MR. WILSON: That is correct, your Honor.
 
 
 50
 THE COURT: Is that, that substantially correct as you understand it, Mr. McConnell?
 
 
 51
 MR. MCCONNELL [defense counsel]: Yes, your Honor.
 
 
 52
 (Supp.App. at 30-31). Had the government promised to recommend a reduction for acceptance of responsibility, it would arguably be a closer case. Here, the government affirmatively represented that it would not make such a recommendation.
 
 
 53
 We also note that when defendant filed the motion to withdraw his sentence, he never alluded to Rule 11 or claimed that there were any irregularities or omissions in the plea taking. This argument comes now as an afterthought.[3]
 
 
 54
 Although the evidence in this case was circumstantial, the decision to plead guilty was made freely and voluntarily. The fact that the defendant later had second thoughts does not dictate that the district judge must allow the plea to be withdrawn. We find no abuse of discretion in the failure to do so.
 
 
 55
 AFFIRMED.
 
 
 
 [1]
 Both defendants pled guilty to a violation of 21 U.S.C. Sec. 841(a)(1), possession with intent to distribute cocaine base (crack), and 21 U.S.C. Sec. 845(a), distribution of cocaine base within 1,000 feet of a school
 
 
 [2]
 Section 3E1.1 of the Federal Sentencing Guidelines provides:
 (a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels.
 (b) A defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial.
 (c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.
 
 
 [3]
 Even if the defendant had received a two-point reduction for acceptance of responsibility, the guideline range would have been 78 to 97 months, so the defendant could have received the same sentence. Given defendant's record and the fact that he pled guilty to selling crack cocaine in a school yard, we cannot presume that the district judge would have viewed this conduct indulgently