IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 16, 2004

## RAYMOND R. KENNEBREW v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County**
**No. 241836     Rebecca Stern, Judge**

_____

**No. E2003-01896-CCA-R3-PC**
**May 24, 2004**
_____

The petitioner, Raymond R. Kennebrew, appeals the denial of post-conviction relief. In this appeal of right, the petitioner asserts (1) that his pleas were neither knowingly nor voluntarily entered and (2) that he was denied the effective assistance of counsel. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Raymond R. Kennebrew, pro se (on appeal), and Steven V. Smith, Signal Mountain, Tennessee (at trial), for the appellant, Raymond R. Kennebrew.

Paul G. Summers, Attorney General & Reporter; Michelle R. Chapman, Assistant Attorney General; and Dave Denny, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On February 2, 2001, the petitioner stabbed the victim, Lebron Sledge, causing a three-inch deep wound which ultimately resulted in death. The petitioner, who was charged with first degree murder, claimed that the victim had been stalking his girlfriend, Ernestine Blackmon, who also had a relationship with the victim. During the course of his pretrial incarceration, the petitioner made two phone calls to Ms. Blackmon claiming, in the first, that the victim had initiated the fray by striking him and, in the second, explaining that "I did it for you, Ernestine." Each of the telephone conversations were recorded. After the jury was selected, the petitioner entered an Alford[1] plea to the reduced charge of second degree murder. There was no appeal.

On October 8, 2002, the petitioner filed a petition for post-conviction relief attacking the validity of the second degree murder conviction. The record establishes that the petitioner was

_____

[1] North Carolina v. Alford, 400 U.S. 25 (1970).

serving concurrent eight-year sentences on probation at the time of the offense at issue. As a result of his guilty plea, probation was revoked and the petitioner was required to serve his eight-year sentence in the Department of Correction. In his petition, he alleged that his guilty plea was involuntarily entered because he did not understand the nature and consequences of the plea. He also contended that he was denied the effective assistance of counsel. In support of his claims, the petitioner argued that his plea, which he entered after jury selection, on the day of his scheduled trial, occurred "during an emotional, stressful, and compelling situation." He claimed that his counsel should have known of his emotional trauma and his mental incompetence and should have insisted upon trial based upon a theory of self-defense.

At the evidentiary hearing, the petitioner testified that he entered into the plea agreement out of his fear that he might have to serve as many as 60 years in prison. He stated that he did not learn until after his imprisonment that he could have asserted the theory of self-defense at trial. The petitioner contended that his counsel had recommended the guilty plea because of the information in the audio tapes of his second telephone call from the jail. He insisted that he shot the victim, who "always took two knives," only after the victim "put his hands on me." He described the victim as "violent," having "just got out of prison on parole. . . ." During cross-examination, however, the petitioner acknowledged that he was not incompetent, only "confused," at the time of his plea. He admitted that he had no history of mental illness.

Trial counsel testified that in preparation for trial, he had considered a Post-Traumatic Stress Syndrome defense. During his investigation, trial counsel learned that the petitioner had suffered significant burns at the age of six. Trial counsel recalled that he had filed a motion requesting the appointment of an expert to determine whether a defense of diminished capacity could be presented. He explained that because he had been unable to establish a particularized need for the service, as required by law, the trial court had denied the motion. Trial counsel described the petitioner as helpful and cooperative in his preparation for trial and confirmed that the theory to be presented at trial was one of self-defense. During the course of his investigation, trial counsel learned that the victim had a prior conviction involving violence and acquaintances of the victim confirmed his propensity for violence. According to trial counsel, Attorney Keith Black, who had been appointed to represent the petitioner on a post-conviction attack upon his prior convictions, helped arrange for the eighteen-year sentence imposed in this case to be served concurrently with the existing eight-year sentences. Trial counsel testified that, in his opinion, the petitioner knowingly and voluntarily entered into the best interest plea primarily because the "I did it for you, Ernestine," tape, which was discovered five days before the trial, "blew [the] self-defense issue out of the water. . . ." It was only after the trial court had denied the defense motion to suppress the audio tape that the petitioner chose to accept the offer made by the state. During the course of the evidentiary hearing, trial counsel provided a detailed summary of the efforts he had made on behalf of the petitioner.

At the conclusion of the evidentiary hearing, the post-conviction court specifically accredited the testimony provided by trial counsel. The court complimented trial counsel for the efforts he had made on behalf of the petitioner: "[H]e was basically wearing everybody out with all these motions and hearings and things about the tapes and the [request] for ex parte . . . services . . . ." The post-

conviction court found that the petitioner, while understandably emotional, but no more so than anyone "about to go to trial on a first degree murder case," fully understood the proceedings and was competent to enter his plea.

Under our statutory law, the petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, the findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615 (Tenn. Crim. App. 1997).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

A petitioner seeking post-conviction relief on the basis of ineffective assistance of counsel must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). This two-part standard, as it applies to guilty pleas, is met when the petitioner establishes that, but for his counsel's errors, he would not have pled guilty and would have insisted on a trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911

S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The claim by the petitioner that he was denied the effective assistance of counsel is without merit. All of the accredited testimony at the post-conviction hearing demonstrated that the petitioner's trial counsel had fully investigated the facts, had presented significant legal questions to the court, and was prepared for trial. The record establishes that trial counsel actively pursued the theory of self-defense. In our view, the petitioner has been unable to establish any deficiency on the part of his counsel and, in consequence, has not demonstrated that he would not have entered a guilty plea absent such deficiencies.

With regard to the petitioner's claim that his plea was involuntary, the United States Supreme court, in Boykin v. Alabama, 395 U.S. 238 (1969), ruled that defendants should be advised of certain of their constitutional rights before entering pleas of guilt. Included among those are admonitions regarding the right against self-incrimination, the right to confront witnesses, and the right to trial by jury. Id. at 243. "[T]he core requirement of Boykin is 'that no guilty plea be accepted without an affirmative showing that it was intelligent and voluntary.'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Fontaine v. United States, 526 F.2d 514, 516 (6th Cir. 1975)). The plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25 (1970). If the proof establishes that the petitioner was aware of his constitutional rights, he is entitled to no relief. Johnson v. State, 834 S.W.2d 922, 926 (Tenn. 1992). A plea which is the product of "ignorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats" is not voluntary. Boykin, 395 U.S. at 242-43.

In this instance, the record establishes that the petitioner was reasonably intelligent, that he was familiar with criminal proceedings, that he was represented by competent counsel who had undertaken extensive preparations for trial, and that he had an adequate opportunity, based upon the advice of his counsel, to consider alternative courses of action. In particular, the petitioner fully understood that the state was withdrawing his charge of first degree murder in consideration of his acceptance of the reduced charge, one which resulted in a sentence that would be served concurrently with two prior felony offenses. See Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). Further, there was simply no evidence of mental illness, incompetence, or other diminished capacity.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE

-4-