IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 26, 2007

## TIMMY CHARLES MCDANIEL v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County**
**No. 258844     Don W. Poole, Judge**

---

**No. E2007-00113-CCA-R3-PC - Filed November 9, 2007**

---

The petitioner, Timmy Charles McDaniel, entered pleas of guilty to first degree felony murder and especially aggravated burglary in exchange for concurrent sentences of life without the possibility of parole and 12 years, respectively.  Following his incarceration, the petitioner filed a petition for post-conviction relief alleging that his guilty pleas were not knowingly and voluntarily entered because he was denied the effective assistance of counsel.  In this appeal, he challenges the denial of his petition for post-conviction relief and reasserts his claim that his guilty pleas were not knowingly, voluntarily, and intelligently entered.  Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Brian S. Finlay, Chattanooga, Tennessee, for the appellant, Timmy Charles McDaniel.

Robert E. Cooper, Jr., Attorney General & Reporter; Sophia S. Lee, Assistant Attorney General; William H. Cox, District Attorney General; and Neal Pinkston, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On August 24, 2005, the petitioner entered pleas of guilty to first degree felony murder and especially aggravated burglary.  Pursuant to a plea agreement with the state, the defendant received concurrent sentences of life without the possibility of parole and twelve years. On May 10, 2006, the petitioner filed a pro se petition for post-conviction relief alleging that he did not knowingly and voluntarily plead guilty, that his arrest was unlawful, that his statement to police was not voluntarily given, that the prosecution failed to disclose exculpatory evidence, that he was denied the effective assistance of counsel, and that he was mentally incompetent to enter his pleas. The post-conviction court dismissed the petitioner's claims relating to his arrest and statement to

police and appointed counsel. Subsequently, the petitioner's appointed counsel filed notice that the pro se petition would not be amended.

The facts of this case, as summarized by the prosecutor at the time of the guilty pleas, are as follows:

> [T]he State's proof would have shown that on the 9th of December 2002, Mary Lou Wojcik's neighbor, at the request of her sister, went to check on Mary Lou at her residence in Mountain Shadows. And when she arrived at the residence, she found that the door had been pried open, standing partially open. She entered to investigate and found the victim's partially nude body lying in the bathroom with severe injuries, blood all over the place. . . .

> It turns out that the victim . . . apparently . . . laid [sic] dead in her home for approximately 24 to 30 hours before she was discovered by the neighbor. . . . [D]uring the course of the investigation, [the Hamilton County Sheriff's Department] learned that a pickup truck had been in the area on that particular night, had been described as having a wooden bed in it, and that was a lead. Eventually, they followed that lead and developed [the defendant] as a suspect.

> [The defendant] was an ex-boyfriend to the daughter of [the victim] and apparently he and some of his buddies had come up from Tunnel Hill, Georgia, on the night of this murder, he having the intent to burglarize this house belonging to [the victim]. He . . . broke into [the house] with a crowbar that he'd brought to the scene, entered the house, found the victim in the bathroom [and] slashed her throat with a knife.

> After she fell to the floor, our proof would demonstrate that he stomped on her, breaking bones inside her body, breaking her sternum, continued to inflict injuries, knife injuries on the victim, slashing her throat. Again, we would show that there were two slash wounds to her throat approximately three and a half inches deep, practically cutting off her head. Also, she had stab wounds to her abdomen area. . . .

> Fortunately, the police were able to locate . . . palm prints and fingerprints that subsequently turned out to belong to the defendant in this case.

. . . . [The defendant] went back to Tunnel Hill after the murder, buried the murder weapon . . . , burned his clothing and then took off to Florida and spent some time there.

Later, he c[a]me back to Tunnel Hill . . . where law enforcement officers in that jurisdiction . . . located him at this residence. The first thing he said to them when they walked in is I know why you're here, because of the woman that I killed.

They brought him back . . . to Chattanooga . . . where he gave an extensive . . . confession as to the facts. . . .

The aggravating factor in this case . . . was the injuries inflicted to the victim that were far in excess of what was required to produce death, the heinous nature of this killing. The defendant, by his own admission, abused the victim's body sexually after having slashed her numerous times, cut her throat, digital penetration. For those facts . . . we sought the [death penalty] in this case.

At the evidentiary hearing, the petitioner abandoned half of his claims and pursued only his claims that he was mentally incompetent to plead guilty, that his trial counsel were ineffective for failing to request a mental evaluation, and that his pleas were not knowingly, voluntarily, and intelligently entered. The petitioner testified that on the day he entered his pleas, he had been in court for nearly five hours and that the trial judge "was overruling all the motions in my case." The petitioner, who claimed he was "very tired and very stressed out," stated that he "was ready to go, I was ready to get the case over with." He stated that he did not understand the consequences of the trial court's rulings and that he "never understood the whole plea itself." He conceded, "I knew that I would be going to prison for the rest of my life," but claimed that he did not comprehend that he was foregoing his right to appeal. When asked why he told the trial court that he understood the consequences of the plea, the petitioner stated that he "was tired, [he] felt threatened, [he] was under pressure and stressed and very depressed and [he] was just ready to get the case over with."

During cross-examination, the petitioner admitted that the two attorneys appointed to represent him visited him numerous times during his pretrial incarceration. He also conceded that he was aware that he had been charged with first degree murder and was facing the death penalty. He acknowledged that his trial counsel went over the State's evidence with him and that they filed numerous motions on his behalf. The petitioner also acknowledged that his trial counsel had reviewed the terms of the plea agreement with him and had explained to him the consequences of pleading guilty. The petitioner testified that it was his choice to plead guilty, explaining, "If we had went to trial, I would have lost."

One of the petitioner's trial attorneys testified that he had been appointed as second chair after the State filed its notice of intent to seek the death penalty. He stated that he and his co-counsel met with the petitioner more than 30 times prior to the entry of his guilty pleas. They went over everything they had received from the State as well as all that they had discovered during their own investigation. Counsel stated that after the trial court denied the motion to suppress the petitioner's statement, the petitioner approached them and stated his intent to change his plea and accept the plea offer from the State. Counsel testified that a mental evaluation of the petitioner established that the petitioner was competent to stand trial. He stated that he encouraged the petitioner to wait a day before changing his plea but the petitioner insisted on pleading guilty that day.

The post-conviction court denied the petition in an extensive written order filed after the conclusion of the hearing. The post-conviction court determined that the petitioner had failed to establish any of his claims. The court concluded that mental evaluations prior to the entry of the petitioner's pleas established that he was competent to plead guilty. The court also found that, contrary to the petitioner's allegation, he received three complete mental evaluations prior to the entry of his plea. Finally, the court determined that the petitioner's pleas were knowingly, voluntarily, and intelligently entered.

In this appeal, the petitioner contends that the post-conviction court erred by denying his petition for post-conviction relief. He contends that he did not knowingly, voluntarily, and intelligently plead guilty because he was unaware of the consequences of his pleas and because he was "tired and stressed" at the time he agreed to plead guilty.[1]

The petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. T. C. A. § 40-30-110(f) (2006). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. *Brooks v. State*, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988).

Due process demands that a guilty plea be entered voluntarily, knowingly, and understandingly. *See Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). "[T]he core requirement of *Boykin* is 'that no guilty plea be accepted without an affirmative showing that it was intelligent and voluntary.'" *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Fontaine v. United States*, 526 F.2d 514, 516 (6th Cir. 1975)). The plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A plea is involuntary if the accused is incompetent or only "if it is the product of 'ignorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Blankenship*, 858 S.W.2d at 904 (quoting *Boykin*, 395 U.S. at 242-43).

---

[1]The petitioner has abandoned the remainder of his claims on appeal.

In this case, the petitioner testified that he made the choice to plead guilty based upon his belief that he could not be successful at trial. Although he claimed that he did not completely understand the consequences of his pleas, the petitioner acknowledged that he knew he would be going to prison for the rest of his life. He conceded that his trial counsel had fully explained the consequences of the guilty pleas to him. Counsel testified that he and his co-counsel had discussed the entirety of the State's evidence with the petitioner and that it was the petitioner's choice to plead guilty. The transcript of the plea submission establishes that the petitioner was advised of the full panoply of his rights before entering his pleas. The trial court also specifically advised the petitioner that he was foregoing the right to appeal, explaining, "Your plea today means there will be no trial, there will be no appeal, your cases will all be over today." The petitioner stated at that time that he was fully aware that he was giving up his right to appeal. Moreover, nothing in the transcript suggests that the petitioner's pleas were the product of "'ignorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Blankenship*, 858 S.W.2d at 904 (quoting *Boykin*, 395 U.S. at 242-43). Under these circumstances, the petitioner has failed to establish by clear and convincing evidence that his guilty pleas were not knowingly, voluntarily, and intelligently entered.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE