# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JUNE SESSION, 1999



**FILED**

**August 9, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **CORY MYERS,** | ) | **C.C.A. NO. 02C01-9810-CC-00309** |
| | ) | |
| Appellant, | ) | |
| | ) | |
| | ) | **GIBSON COUNTY** |
| **VS.** | ) | |
| | ) | **HON. C. CREED MCGINLEY,** |
| **STATE OF TENNESSEE,** | ) | **JUDGE** |
| | ) | |
| Appellee. | ) | (Post-Conviction) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CIRCUIT COURT OF GIBSON COUNTY

FOR THE APPELLANT:

MICHAEL R. HILL
1066 S. Main Street
P.O. Box 679
Milan, TN 38358

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General and Reporter

PATRICIA C. KUSSMANN
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

CLAYBURN L. PEEPLES
District Attorney General

BRIAN FULLER
Assistant District Attorney General
110 s. College Street
Suite 200
Trenton, TN 38382

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Cory Myers, appeals the Gibson County Circuit Court's denial of his petition for post-conviction relief. Defendant confessed to killing a former mayor of Trenton, Tennessee during perpetration of a burglary. The Gibson County Grand Jury indicted Defendant for first degree felony murder, especially aggravated burglary, and attempted especially aggravated robbery; for which the State provided notice it would seek the death penalty. On October 10, 1997, Defendant pleaded guilty to first degree felony murder, and the trial court sentenced him to the State's recommended term of life imprisonment.

Defendant filed his petition for post-conviction relief on February 23, 1998. Following an evidentiary hearing on August 21, 1998, the trial court denied Defendant's petition. In this appeal, Defendant argues that the trial court erred by denying post-conviction relief because (1) he suffered the ineffective assistance of counsel prior to and during the guilty plea hearing, and (2) his guilty plea was not knowing and voluntary due to such ineffective assistance.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

To determine whether counsel provided effective assistance at trial, the court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To succeed on a claim that his counsel was ineffective at trial, a petitioner bears the burden of showing that his counsel made errors so serious that he was not functioning as counsel as guaranteed under the

Sixth Amendment and that the deficient representation prejudiced the petitioner, resulting in a failure to produce a reliable result. Strickland v. Washington, 466 U.S. 668, 687 (1984); Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). To satisfy the second prong the petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When reviewing trial counsel's actions, this Court should not use the benefit of hindsight to second-guess trial strategy and criticize counsel's tactics. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Counsel's alleged errors should be judged at the time they were made in light of all facts and circumstances. Strickland, 466 U.S. at 690; see Cooper 849 S.W.2d at 746.

This two-part standard of measuring ineffective assistance of counsel also applies to claims arising out of the plea process. Hill v. Lockhart, 474 U.S. 52 (1985). The prejudice requirement is modified so that the petitioner "must show that there is a reasonable probability that, but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

If afforded a post-conviction evidentiary hearing by the trial court, a petitioner must do more than merely present evidence tending to show incompetent representation and prejudice; he must prove his factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). When an

evidentiary hearing is held, findings of fact made by that court are conclusive and binding on this Court unless the evidence preponderates against them. Cooper, 849 S.W.2d at 746 (citing Butler, 789 S.W.2d at 899).

Here, Defendant specifically argues that his trial counsel was ineffective by failing to move (1) to change venue to another county and (2) to suppress his confession to police on the grounds that he was incapable of voluntarily giving a statement.[1] The trial court issued written findings accompanying its order denying post-conviction relief; and on the issue of ineffective assistance of counsel, the court concluded that

> [t]he record clearly demonstrates that [trial counsel] was very vigorous in his defense of the Petitioner. A full and thorough investigation was conducted, as well as extensive communication between the Attorney and the defendant. The record fully supports that the defendant was apprised of all his Constitutional rights including right to trial by jury. Numerous discussions were had between the Petitioner and his Attorney concerning all of his rights and whether a plea of guilty might be in his best interest. Petitioner's counsel engaged in full and complete discovery and kept the Defendant informed at all times. The court finds that tactical decisions were made concerning possible change of venue, which the defendant fully concurred in.

Defendant contests the trial court's findings, however, asserting that counsel should have moved to suppress his confession because he "suffers from various mental disorders such as Schizophreniform Disorder, Attention Deficit Hyperactivity Disorder, and auditory hallucinations." Furthermore, he attests that his education ended in the ninth grade and that he can neither read nor write well. The confession was written by a member of law enforcement and affirmed

_____

[1] Defense counsel filed a motion to suppress this confession on the basis of a violation of Defendant's Sixth Amendment right to counsel. This motion did not include any other grounds for suppression.

by Defendant by signature, and he now claims that he did not have the mental capacity or intelligence to sign the confession due to his psychological disorders, limited education, and borderline intellectual functioning. Moreover, he testified at post-conviction that (1) had he better understood the trial procedures and discovery motions, (2) had his counsel successfully moved for suppression of his confession, or (3) had counsel moved for a change of venue to avoid the passions and prejudices of a Gibson County jury, he would have insisted on going to trial rather than pleading guilty.[2]

The record on post-conviction reflects that, contrary to Defendant's allegations, his trial counsel, Tom Crider, testified he did not tell Defendant the only way to avoid the death penalty was a guilty plea. Crider claimed, "I might have personally thought that [a guilty plea] would have been the wiser course for him to have taken in the case, but it always had to be his option on what he wanted to do." In addition, Crider attested to having interviewed a number of alibi witnesses, perhaps the strongest of whom informed the investigator to the effect that he would not lie for Defendant. Crider also testified that he, his staff, or his investigators would have discussed with Defendant the results of all discovery, including the ballistics report showing that the murder weapon had been traced to Defendant.

---

[2] More accurately, Defendant stated that a change of venue would have "affected" his decision to plead guilty. However, to obtain relief based upon ineffective assistance of counsel involving a guilty plea, Defendant must show a reasonable probability that, but for counsel's deficient representation, he would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52 (1985). This shortcoming is not essential, however, to our decision affirming the denial of post-conviction relief.

Crider stated that he and Defendant did discuss filing a motion to change venue; but after he informed Defendant that a Gibson County jury had never returned a sentence of death against a member of the community, Defendant decided against filing such a motion. Crider remembered discussing trial procedure with Defendant, including the right to testify, because he recalled warning Defendant he would also be subject to cross examination. In addition, Crider testified that he advised Defendant about his right to appeal but cautioned him regarding the rare success of appeals by criminal defendants. Finally, Crider testified that the defense team explained to Defendant that his trial would be a two-part process and that a jury would decide whether he received the death penalty. Crider stated, "I'm absolutely certain that I never . . . told him that all he could do was plead guilty."

When asked whether Defendant had understood his rights and the considerations involved in a decision to plead guilty or go to trial, Crider stated,

> [Y]ou do the best job you can in communicating and we went to—we put in a lot of extra effort to try to insure as best we could that Cory [Myers] was understanding and that was a part of the reason that we had some of his family involved in the process so that while we might think that we were explaining things and that he understood them, if there were things that weren't understood it would be brought back to our attention or the family could explain them in ways that he would understand. . . . My impression was that he understood what we were trying to convey to him about the process that he was involved in and about the facts and limitations of his case.

We conclude that the record fully supports the findings of the trial court; Defendant has not proven otherwise by clear and convincing evidence.


## II. VOLUNTARY AND KNOWING PLEA

Defendant argues next that because he received the ineffective assistance of counsel, his guilty plea was neither voluntary nor intelligent. First, we have concluded above that Defendant did not suffer the ineffective assistance of counsel; therefore, this related allegation must fail. Second, upon a thorough review of the post-conviction record, we determine that no other unalleged infirmity disturbs the voluntary and intelligent nature of Defendant's plea.

The "core requirement" of federal constitutional law regarding the validity of guilty pleas is that "no guilty plea be accepted without an affirmative showing that it was intelligent and voluntary." Fontaine v. United States, 526 F.2d 514, 516 (6th Cir. 1975) (citing Boykin v. Alabama, 395 U.S. 238 (1969)). In its exhaustive and comprehensive evaluation of the requirements for a voluntary, intelligent plea of guilt, the Tennessee Supreme Court stated,

> [A] court charged with determining whether . . . pleas were "voluntary" and "intelligent" must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)).

Regarding the voluntary nature of Defendant's guilty plea, the post-conviction court found,

> A review of testimony taken under oath from the Petitioner at the time his plea of guilty was submitted reveals he was questioned at some length prior to the acceptance of the plea by the court. The court went into some detail to determine if in fact there had been any coercion or if there was anything to indicate that the plea was

anything except completely voluntary. The testimony taken under oath as well as the court's observations of the defendant during the taking of the plea indicate that the plea was entered into freely and voluntarily and there was nothing whatsoever to indicate to the court that the Petitioner had been coerced in anyway [sic]. The Petitioner's testimony in the present hearing is diametrically opposed to his earlier testimony given under oath and is also contrary to the testimony given by the attorney that represented him throughout the entire criminal process. The court finds the defendant's present testimony lacks any credibility and further finds the plea of guilty entered on October 10, 1997, was done knowingly and voluntarily by the Defendant.

The record fully supports the decision of the trial court. Exhibit 1 to the post-conviction record consists of a transcript of Defendant's guilty plea hearing. Regarding the voluntary nature of the plea, the transcript reflects the following colloquy between Defendant and the trial judge:

> THE COURT: Mr. Myers, it's been indicated to the Court that you may wish to enter a plea of guilty to the charges against you. Is that correct?
> MR. MYERS: Yeah. Yes, sir.
> THE COURT: First of all, is this what you want to do?
> MR. MYERS: Yes, sir.
> THE COURT: Are you doing so freely and voluntarily?
> MR. MYERS: Yes, sir.
> THE COURT: Do you know what I mean when I say freely and voluntarily?
> MR. MYERS: On my own.
> THE COURT: Yes, sir. Are you doing this on your own?
> MR. MYERS: Yes, sir.
> THE COURT: Has anyone forced you to enter this plea against your will?
> MR. MYERS: No, sir.
> THE COURT: Are you free of alcohol and drugs today?
> MR. MYERS: Yes, sir.

At the evidentiary hearing, Defendant testified that he felt pressured to plead guilty because of the pressure Crider placed upon Defendant's grandmother and the pressure that she, in turn, placed on him. He stated, "[Crider] was taking her to an early grave by the pressure he was putting on her

and I got tired of it."  When Crider was asked whether he encouraged Defendant's grandmother to persuade him to plead guilty, Crider responded that he did not—that he merely explained to her the grim chance for success at trial in light of the weight of evidence against Defendant.

Testimony by Crider at the evidentiary hearing reveals that Defendant came before the trial court with the intent to plead guilty prior to the time his actual plea was entered.  On that previous day, Defendant reconsidered his decision to plead guilty, and he did not plead until some months later.  We conclude Defendant has not presented clear and convincing evidence that the trial court erred by finding the plea rendered voluntarily.

We furthermore conclude that Defendant's plea was knowing and intelligent.  Though he contends that he did not fully comprehend the proceedings or the nature of his plea, the record indicates to the contrary, despite his limited education and alleged disorders.  At his plea hearing, Defendant attested to the following:

> THE COURT: Do you fully understand what you're doing?
> MR. MYERS: Yes, sir.
> THE COURT: Have you discussed the matter fully and thoroughly with your attorney, Mr. Crider, of the Public Defender's Office?
> MR. MYERS: Yes, sir.
> THE COURT: Do you understand the nature of these charges and have you discussed with him fully any possible defenses that might be raised on your behalf?
> MR. MYERS: Yes, sir.
> THE COURT: . . . Do you understand that you've been charged with first degree murder and what is known as felony murder; that is, the commission of a homicide during the commission of a felony?
> MR. MYERS: Yes, sir.
> THE COURT: Do you understand that the range of punishment for first degree murder in the State of Tennessee could be death by electrocution?
> MR. MYERS: Yes, sir.

. . . .
THE COURT: Have you talked to your attorney about your constitutional rights?

MR. MYERS: Yes, sir.

The trial judge proceeded to question Defendant regarding his knowledge and understanding of each constitutional right which he would waive upon pleading guilty. Defendant each time responded that he understood and finally affirmed before the court that he was guilty of the offense at bar. We find that Defendant's plea was entered intelligently.

Because we have determined that Defendant suffered no ineffective assistance of counsel and that his guilty plea was entered both voluntarily and intelligently, we affirm the decision of the trial court denying post-conviction relief.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
DAVID G. HAYES, JUDGE

_____
NORMA McGEE OGLE, JUDGE