IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 6, 2006

## CHRISTOPHER BUSBY v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-27704     W. Fred Axley, Judge**

_____

### No. W2005-01503-CCA-R3-PC  - Filed July 21, 2006
_____

The petitioner, Christopher Busby, appeals the denial of his petition for post-conviction relief.  In this appeal, he asserts that he was denied the effective assistance of counsel and that his guilty pleas were not knowingly and voluntarily entered.  The judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and J.C. MCLIN, JJ., joined.

Paul Kellison Guibao, Memphis, Tennessee, for the appellant, Christopher Busby.

Paul G. Summers, Attorney General & Reporter; C. Daniel Lins, Assistant Attorney General; William L. Gibbons, District Attorney General; and Tracye Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On October 7, 2002, the petitioner entered pleas of guilty to three counts of aggravated robbery, two counts of possession of a handgun by a convicted felon, attempted first degree murder, burglary of a motor vehicle, and theft over $1000.  Pursuant to a plea agreement with the state, the petitioner received a  Range I, effective sentence of twenty-nine years.  In September of 2003, the petitioner filed a petition for post-conviction relief alleging that he had been denied the effective assistance of counsel and asserting that his guilty pleas were not knowingly and voluntarily entered.

At the evidentiary hearing, the petitioner testified that his counsel failed to properly investigate the case and failed to adequately communicate prior to trial.  He claimed that even though he had provided trial counsel with information about an alibi witness, counsel failed to locate the witness.  He contended that he informed counsel that the witness, whom he knew only as "Kilo," "h[ung] out . . . over there in Orange Mound. . . . [and] in Frayser, too."  The petitioner, who testified that he described the witness as a "[t]all, black guy with a few golds in the mouth [and] . . . a short

hairstyle," acknowledged that trial counsel had informed him that her investigator was unable to locate the witness with so little information. The petitioner conceded that he later informed trial counsel that he had learned that "Kilo" was "on the run."

The petitioner asserted that his counsel met with him on only one occasion at the jail and that the meeting was brief. While acknowledging that he has also met with his trial counsel during pretrial court appearances, he claimed that the two never had a "full discussion" about the case. The petitioner contended that trial counsel refused to honor his request to file certain motions, including a motion to suppress a pretrial identification from a photographic lineup. He testified that he had asked his trial counsel to withdraw from the case and had asked the trial court to appoint another attorney. According to the petitioner, he complained to the Board of Professional Responsibility about his trial counsel but the Board "found [trial counsel] not to be at fault."

The petitioner testified that he pled guilty only because he did not want to proceed to trial with his counsel. It was his belief that she had not devoted "100% of her time" to his case as a result of the demands by other clients. The petitioner asserted that "if [he] had . . . a competent attorney at that particular time, a person that was going to work for [his] best interest . . . [he] could have proven [his] case."

During cross-examination, the petitioner acknowledged that counsel had announced to the court that she was ready to proceed with trial when he entered his guilty pleas just before jury selection. He conceded that he had provided trial counsel with only a nickname and a general description for his alibi witness. He admitted that it would have been difficult for the investigator to have located the witness with the information available. The petitioner admitted that his trial counsel had provided him with all of the discovery material from the state and had informed him of the potential sentence if he should be convicted. He acknowledged that it was counsel's opinion that the state's proof was compelling and that he was likely to be convicted, which was "not what [he] wanted to hear." The petitioner admitted that the state had witnesses who could place him at the scene of the crimes and in possession of a handgun. He acknowledged that his trial counsel, who explained why she would not file his requested pretrial motions, presented two plea offers from the state, each of which he rejected. The petitioner, who knew that he qualified as a Range II offender, conceded that he received a Range I sentence pursuant to the plea agreement. He described his acceptance of the plea agreement as "the lesser of two evils . . . , 114 [years] or 29." He admitted that he pled "freely and voluntarily" and knew that it was in his best interest.

Trial counsel, who was appointed to represent the petitioner at his arraignment, testified that she received discovery materials at that time because the petitioner had been classified as "a major violator." She stated that she met with the petitioner briefly on that date and that he told her "his side" and provided her with information regarding a prospective witness. According to trial counsel, she went through the discovery package with the petitioner two months later. She testified that when she informed the petitioner that her investigator had been unable to locate his witness, he could not provide any more information about his whereabouts. She stated that one month later, she met with the petitioner and the two discussed the results of her pretrial investigation. Trial counsel recalled

that she was unsuccessful in her efforts at reduction of the petitioner's bond. She remembered that the petitioner was upset when he learned that one of the victims had refused to speak to her investigator. Trial counsel explained that she did not file a motion to suppress because "[t]he only thing that could have possibly been suppressed were items that . . . we would want to use at trial, to deal with the identification issues." She stated that the "only other motion he ever mentioned . . . was one to compel the state to bring all their witnesses, all their evidence to [c]ourt and have the [j]udge review it to see if he should be held." Trial counsel recalled that the petitioner expressed dissatisfaction when she explained to him "that there was not such a motion. That that was, essentially, a trial. And that he was set for trial."

Trial counsel testified that when she met at length with the petitioner in March of 2001, the two discussed the case in detail and also discussed the complaint the petitioner had filed with the Board of Professional Responsibility. She assured the petitioner that she was not angry and would continue to represent him to the best of her abilities. She recalled that when the petitioner asked about putting an attorney on retainer because he "wanted someone who would devote 100% of their time to representing him," she explained that "a retainer did not mean that an attorney represented just one person." Trial counsel testified that she attempted to withdraw from the case at the petitioner's request but the trial court refused to relieve her. Trial counsel contended that she was fully prepared for trial and that more visits with the petitioner would not have served any further benefit. Trial counsel confirmed that the state had made two plea offers but the petitioner was unwilling to accept either even though she had advised him that the incriminating evidence was strong and that he faced a potential sentence in excess of one hundred years if convicted on all counts."

The post-conviction court denied relief, concluding that the petitioner had not been denied the effective assistance of counsel and determining that his guilty pleas were knowingly and voluntarily entered. As to the petitioner's claim that his trial counsel had failed to adequately investigate the case and failed to sufficiently communicate with him, the post-conviction court accredited trial counsel's testimony that she had thoroughly investigated the case and was fully prepared to proceed with trial. The court concluded that "[t]here [was] nothing in the record or in [p]etitioner's testimony that would substantiate [p]etitioner's contention that the lack of number of meetings [c]ounsel had with [p]etitioner directly and adversely affected the outcome of the trial." The post-conviction court also ruled that "[t]he lack of specific information provided by the [p]etitioner made it extremely difficult for [t]rial [c]ounsel to locate this witness, and as such, counsel cannot be viewed as rendering ineffective assistance of counsel on this basis." With regard to the petitioner's claim that his guilty plea was not knowingly and voluntarily entered because his trial counsel was ineffective, the post conviction court determined that the petitioner's complaint was "too generalized in nature to properly address." The court also concluded that the petitioner was fully apprised of the consequences of his pleas, that the petitioner had admitted that the guilty pleas were in his best interest, and that he had "freely and voluntarily" pled guilty.

In this appeal, the petitioner asserts that he was denied the effective assistance of counsel. He specifically asserts that his trial counsel was ineffective by failing to locate his alibi witness prior to trial.

Under our statutory law, the petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). The error must be so serious as to render an unreliable result. Id. at 687. It is not necessary, however, that absent the deficiency, the trial would have resulted in an acquittal. Id. at 695. Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). When a petitioner claims ineffective assistance of counsel in relation to a guilty plea, the petitioner must prove that counsel performed deficiently and, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn.

1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

The petitioner testified that he knew neither the given name nor the address of his alibi witness, "Kilo." The petitioner conceded that his trial counsel told him that her investigator had been unable to locate the witness with so little information. Trial counsel requested additional information from the petitioner but he was unable to provide any. The post-conviction court concluded that the "lack of specific information" prevented trial counsel from locating the witness and that, as a result, trial counsel's performance was not deficient.

The petitioner cannot prevail for two reasons. First, he failed to present "Kilo" as a witness at the evidentiary hearing. Generally, it is incumbent upon the petitioner to produce any witnesses at the evidentiary hearing who might have been able to provide favorable testimony for the defense at trial. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Typically, that is the only method of establishing prejudice. If "Kilo" could have provided the petitioner with an alibi, he should have been produced as a witness at the evidentiary hearing. Otherwise, this court could only speculate as to what prejudice may have resulted by trial counsel's failure to locate the witness. Secondly, the post-conviction court specifically accredited the testimony of trial counsel that she attempted to locate the witness but was unable to do so because of the lack of specific information. Under these circumstances, the petitioner is not entitled to relief on this issue.

II

The petitioner also contends that his guilty pleas were not knowingly and voluntarily entered because he was denied the effective assistance of counsel. In Boykin v. Alabama, 395 U.S. 238 (1969), the United States Supreme Court ruled that defendants should be advised of certain constitutional rights before entering pleas of guilt. Included among those are admonitions regarding the right against self-incrimination, the right to confront witnesses, and the right to trial by jury. Id. at 243. "[T]he core requirement of Boykin is 'that no guilty plea be accepted without an affirmative showing that it was intelligent and voluntary.'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Fontaine v. United States, 526 F.2d 514, 516 (6th Cir. 1975)). The plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). If the proof establishes that the petitioner was aware of his constitutional rights, he is entitled to no relief. Johnson v. State, 834 S.W.2d 922, 926 (Tenn. 1992). A plea which is the product of "ignorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats" is not voluntary. Boykin, 395 U.S. at 242-43.

Here, the petitioner testified that he pled guilty only because he was displeased with trial counsel's representation and he did not want to go to trial with her as his attorney. He admitted, however, that he entered the guilty pleas "freely and voluntarily" and that it was in his best interest to plead guilty. He conceded that he chose to accept the plea agreement because it represented the

"lesser of two evils." Trial counsel, who had earlier made a futile effort to withdraw as requested by the petitioner, testified that she was fully prepared to go to trial when the petitioner decided to enter the plea agreement. The post-conviction court specifically accredited her testimony. Under these circumstances, it is our view that the petitioner has failed to establish by clear and convincing evidence that his pleas were involuntary.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE