# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 14, 2013

## STATE OF TENNESSEE v. VERNON LAVONE ROBERTS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2011-D-3400     Steve Dozier, Judge**

---

**No. M2013-00466-CCA-R3-CD - Filed February 25, 2014**

---

Defendant, Vernon Lavone Roberts, was indicted by the Davidson County Grand Jury for two counts of the sale of more than .5 grams of cocaine within 1000 feet of a school zone and two counts of the sale of more than 26 grams of cocaine within 1000 feet of a school zone. Subsequently, Defendant entered a guilty plea to four counts of the sale of cocaine outside of a school zone. He received a sentence of twenty-years for each conviction, with three sentences to be served concurrently with each other but consecutively to the fourth conviction for an effective forty-year sentence as a Range II multiple offender. On appeal, Defendant argues that the trial court erred by denying his motion to withdraw his guilty pleas based on his assertion that the pleas were not voluntarily or knowingly entered. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Erik R. Herbert, Nashville, Tennessee, (on appeal); and Justin Johnson, Nashville, Tennessee, (at trial), for the appellant, Vernon Lavone Roberts.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; Pamela Anderson and Rachel Sobrero, Assistant District Attorneys General, for the appellee, the State of Tennessee.

# OPINION

## I. Background

On October 1, 2012, Defendant was scheduled to go to trial. However, on that date he informed the trial court that he was not ready for a trial. The trial court responded:

> Okay. Well, we are. So you got two options - - three options: You can go to trial in your jail outfit, you can go to trial in your street clothes, or you can resolve your case; which of those you [sic] want to pick? I mean, this case has been pending up here since December, almost ten months. You have been in jail since June, so - - June of 2011; don't you want to resolve it? Don't you want to get out of jail? Have a jury find you not guilty? I don't know what you think your options are, but those are the three that I can think of.

Defense counsel then informed the trial court that he had received the State's Tennessee Rule of Evidence 404(b) notice that morning and that he had also filed a motion to reveal information about the informant. The trial court then allowed Defendant the opportunity to go to the back and again speak with trial counsel. He further informed Defendant that when he finished talking with trial counsel, "when you come out you will either be ready for trial ever how [sic] you want to be presented in front of the jury either in street clothes, or jail clothes, or plead and resolve your case; those are what your options are."

After speaking with trial counsel, Defendant returned to the courtroom and informed the trial court that he needed new counsel because he was not ready for trial. The trial court denied Defendant's request and said: "I mean, you have been around long enough, [Defendant], according to this sentence enhancement notice that I am looking at to know the ins and outs of the system." Defendant told the trial court that he had never had a jury trial. Trial counsel also requested to be relieved from representing Defendant because he felt that Defendant would not be happy with "anything I do today or tomorrow." The trial court denied trial counsel's request noting that trial counsel had not given the court "any reason" to relieve him from representing Defendant. Defendant then indicated that he wanted a jury trial.

Upon trial counsel's request, the trial court allowed Defendant and trial counsel to step outside of the courtroom once again to discuss the case. Trial counsel then returned to the courtroom and announced that a plea agreement had been reached with the State.

At the guilty plea submission hearing, Defendant informed the trial court that he was not under the influence of alcohol or drugs and that he was not suffering from any mental

health problems. The trial court explained the charges against Defendant and his potential sentence. Concerning the plea agreement, the State made the following announcement:

> The State is dropping the school [sic] on all four of these counts, Your Honor. Counts one, two, and three are going to be concurrent with each other and they are going to be for the - - counts one and two, the sale of over .5 grams of cocaine and then in count three, sale of over 26 grams of cocaine; on all three of those sentences he would be pleading to 20 years as a range two offender.
>
> And then count four would be likewise, a non-drug-free school zone, dropping that. He would be pleading to sale of over 26 grams of cocaine, that would be a 20 year sentence as a range-two offender. It would be consecutive to counts one through three for an effective 40 year sentence as a range-two offender. He would qualify as a range-two offender.
>
> And also, Your Honor, originally when he was arrested, I believe he was on alternative release in case number 2009-C-2855, he was ultimately violated and has been serving that sentence. This sentence would be consecutive to that sentence, which I believe is almost over.

The trial court then again explained the sentence to Defendant and asked if he understood. The court also informed Defendant that he could have a jury trial, and he would be represented by counsel at the trial. Defendant indicated that he understood all of his rights and that he wanted to enter the guilty plea. Defendant agreed that trial counsel reviewed the guilty plea with him and that no one was forcing him to enter the plea.

The State then offered the following factual basis in support of Defendant's guilty plea:

> Your Honor, the State's proof in this case would be on April 15th of 2011, Metro police were working in conjunction with a confidential informant that made arrangements and met with the defendant Vernon Roberts at the Obama Market at 626 40th Avenue here in Nashville, Tennessee.
>
> The confidential informant met with the defendant who was by himself in a vehicle. The confidential informant got in the vehicle, and an exchange was made. This was being monitored by a listening device with detectives who could hear statements consistent with a drug sale. The confidential informant then after the exchange with the defendant, returned immediately to police where he provid[ed] them with cocaine and on that, Your Honor, that was 13 -

- that later tested at the TBI lab to be 13.08 grams of cocaine in exchange for $550.

On April 18th , of 2011, there was - - was likewise the same confidential informant who had communications with the defendant Vernon Roberts, and arrangement was made for purchase of cocaine in exchange for $550. This time the location was changed by the defendant to 3900 Charlotte Pike which is at the Rosie's Market here in Davidson County. Likewise, the confidential informant met with the defendant, and [an] exchange was made. The defendant gave the confidential informant what [was] later tested by the TBI to be 14.04 grams of cocaine in exchange for $550. Again, there was a listening device and the police had eyes on this particular encounter. And the defendant was heard to make statements consistent with a drug transaction.

On April 21st, of 2011, the same procedures were followed and the confidential informant met with the defendant again back at 626 40th Avenue North at the Obama Market where the confidential informant purchased from the defendant 27.83 grams of cocaine in exchange for $1,000. This was monitored by the detectives who recognized the defendant by voice and by sight.

And then lastly, on the [sic] May 5th, of 2011, this was also at the Obama Market at 626 40th Avenue here in Davidson County. The same confidential informant, again met with the defendant and purchased from the defendant 28.15 grams of cocaine hydra-chloride and 19.94 grams of cocaine. There was a listening device that was used again in this situation and the detectives recognized the defendant's voice and heard him make statements such as, here's the hard and the soft cocaine that was provided to the confidential informant.

All of these events occurred here in Davidson County.

Defendant filed a subsequent motion on October 30, 2012, to set aside his guilty plea. Hearings on the motion were held on December 7, 2012, and on January 3, 2013. Trial counsel testified that he was retained to represent Defendant on July 25, 2011. At the time, the case was still in general sessions court, and there was a pending community corrections violation. Trial counsel testified that Defendant was incarcerated during the entire time that he represented Defendant. He met with Defendant on at least twelve occasions, and Defendant also "would call quite a bit." Trial counsel testified that he was ready for trial, and Defendant had turned down an offer in general sessions court when he was represented by previous counsel to serve a twenty-year custodial sentence at thirty-five to forty percent.

He said that the State made a second offer on March 29, 2012, of "20 years at 100 percent time four [sic] consecutive to his Division 4 case." Trial counsel further testified:

> So it was set for trial at that time, and I made a note that he hoped to flatten the Division 4 case and make bonds. So that was it on that day.
>
> On October 1ˢᵗ, I continually tried to negotiate a case because I knew [Defendant] was looking at 25 years at 100 percent. General Anderson has also been the kind she tells me up front what she is going to seek out. She was seeking out - - and I let [Defendant] know this. She was going to seek out - - if he was convicted of more than one count, she was going to seek consecutive sentences based on his record. And then at that time we are able to negotiate out the sentence.

Concerning trial preparation, trial counsel testified:

> Most of my trial preparation is prior to [when the court] actually [sets] the case for trial. Virtually all of my trial preparation because that's how I avoid going to trial. I have everything up front at that point and that's - - I don't wait - - I try not to wait to do the preparation later. I want the Assistant D.A. to see what we're doing, to see the weaknesses in the case. So most of my trial preparation was done before it was set for trial.
>
> And I did file the motion and brief in support for disclosure of the confidential informant, and did that on September 28ᵗʰ. And the reason I do that late is as soon as that informant is known or given to me then generally all deals are off of the table. And then also I had filed [a] bonds motion in the interim also.

Trial counsel testified that prior to the trial date on October 1, 2012, he worked preparing for the case the previous Saturday and Sunday, even though he hoped to settle the case. He noted that he spent approximately sixteen hours that weekend reviewing everything for trial. Trial counsel testified that the "biggest part" of his trial preparations occurred during the preliminary hearing and that he had "CDs, DVDs of the preliminary hearings and the Court's discovery." Trial counsel specifically testified, "I was excellently prepared for this trial." He noted that he visited the crime scenes, conducted research, and concluded that the crimes did not occur within a school zone. Concerning his meetings with Defendant, trial counsel testified:

> Everything - - that every time [Defendant] and I met, we would talk about the trial, what we were looking at. One of his contentions was that he had met

inside the Obama Market three times. He was actually indicted four times when we first met. That would make it hard for the informant to have been seen.

And we talked about whether he would testify depending on what was said. But then we would have prior testimony that - - I believe it was Detective Lowe had indicated that the sales took long [sic] place outside.

Trial counsel noted that he filed a motion three days before trial to reduce Defendant's bond. He explained that it was not his normal practice; however, he filed it at the request of Defendant and Defendant's family. Trial counsel testified:

And, of course, I want to make sure it's a motion that is well taken. However, [Defendant] had gotten into trouble at CCA and he was in the hole for a tremendous amount of times. He was only getting day for day jail credit. He was getting no extra jail credits.

So whereas - - and I even have a note here somewhere, thought he would have been eligible for bonds that he would have finished a three-year sentence. And when I filed the bond motion he still was not eligible. He still had not finished his three-year sentence, and that's why then I was struck on the day. Because I knew that it wasn't.

I went ahead and filed it; though I told him that if he flattened that three-year sentence, excuse me, if for some reason the case, the trial was continued that we would have our motion on file that we could go forward. But at that time he was not even eligible for his release from his three-year sentence.

Trial counsel testified that he did not tell Defendant on the trial date that his case would be continued. He thought that the case would go forward because the prosecutor felt that she had the "upper hand with the facts." Trial counsel testified that he knew Joy Dennis, who was Defendant's wife or long-time fiancée, and he knew Defendant's mother, Terri Osborne. He agreed that Ms. Dennis was present for every court date, and Ms. Osborne was also present in court. Trial counsel thought that he met with Ms. Dennis and Ms. Osborne on September 27, 2012, the day that the bond motion was denied. He did not recall telling them that the case would be continued or that he would try to get the case continued. Trial counsel testified:

I had indicated that General Anderson, this was her primary trial and it was going off, that was the indication that we had all along. I had - - may have

-6-

indicated to them that General Anderson, if for some reason that she would not have a witness here, that we would not oppose a continuation to let [Defendant] be able to make bond. But as General Anderson - - if she was going to be ready, the trial was going forward.

Trial counsel testified that on the trial date on October 1, 2012, he called Ms. Dennis and told her to bring some "street clothes" to Defendant for trial. He said that the clothes were supposed to have previously been brought on September 27, 2012, but they were not. Concerning the clothing, trial counsel testified:

> I think it's this Court's rule to have them here on the Friday or before 8:00 or 8:30 what every time is. And then, yes, I did call back because they hadn't come in the first day. And then all of the sudden they weren't here on Monday morning and we didn't get the clothes, I don't think, until a little after 9:00.

Trial counsel admitted that none of Defendant's family members were present at the courthouse at 9:00 a.m. on October 1, 2012.

On cross-examination, trial counsel testified that he had been practicing law since 1989, and "[v]irtually 100 percent" of his practice had been criminal defense work. He said that for the past fifteen years he had primarily been handling drug cases and had become known as a "drug lawyer." Trial counsel testified that a lot of his strategy was developed at the preliminary hearing in Defendant's case.

Trial counsel testified that in his experience with the district attorney general's office, most of the assistant district attorneys general will not settle a case once information about the confidential informant has been turned over. He said that when receiving information on an informant, he was usually given a stack of information which included the contract that the informant signed with the police department, the informant's criminal history, and any other information about consideration that the informant may have received. Trial counsel testified that he would not have hesitated to go to trial on October 1, 2012, even if he had not received information on the confidential informant until that morning. Trial counsel testified that on the morning of trial, the prosecutor had given him the name of the informant on a piece of paper, but he did not look at it prior to settling the case because he knew that if he looked at the name, the prosecutor would not offer Defendant any further plea deals.

Trial counsel testified that Defendant's story and defense had been consistent throughout the fourteen months that he represented Defendant. He told Defendant what the officer would testify to and that they were able to see that the offenses took place within a school zone. Defendant's version of events was that all four drug sales took place inside the

Obama Market rather than outside as stated by the officer. Defendant later agreed that all four of the drug transactions did not take place inside the market.

Trial counsel testified that he reviewed the preliminary hearing testimony and went over the weaknesses and strengths of the case. He said:

> We went over all of that and showed the credibility would be one thing on the witness stand but going to trial with that particular thing being said it would be hard for [Defendant] not to take the witness stand. [Defendant] did not want to take the witness stand because of his record.

Trial counsel testified that he and Defendant did not have any problems until the trial date. He said that Defendant either wanted the case to be continued or to make bond. Defendant indicated that he would accept a plea offer of eight to twelve years on community corrections, but trial counsel informed him that particular offer was not "on the table it's not going to be on the table." At the time, Defendant also had another pending drug case involving the drug free school zone. Defendant entered a plea of guilty in that case on October 4, 2012.

On redirect examination, trial counsel testified that Defendant did not look surprised when he told Defendant that the trial was going forward on October 1, 2012. Trial counsel said that he let Defendant know that it was his trial strategy not to learn information on the confidential informant until the time of trial in order to see if the State would lower the plea offer. He said that this strategy had been quite successful over a twenty-three-year period. Trial counsel testified that although he did not have the informant's full name, they had information on him.

Defendant testified that trial counsel met with him one time at the jail, and they met on several court dates. He claimed that he did not have any meaningful conversation with trial counsel about the case, and they did not discuss the facts and circumstances of the case or possible defenses. Defendant testified that he received a plea offer from the State on September 27, 2012, at a status conference. The offer was for twenty years at one-hundred percent. On that date, trial counsel had given him a copy of discovery. However, they did not review it. He said that his meeting with trial counsel on September 27, 2012, lasted for approximately ten minutes. Defendant claimed that he and trial counsel discussed continuing the trial where he could "make the bond once [he] flatten[ed] [his] jail time out [sic] CCA." He said that trial counsel told him to finish serving the unrelated sentence that was set to expire on October 24, 2012, and they would discuss trying to obtain a bond.

Defendant testified that from the time of his indictment in December of 2011 until his trial date, he and trial counsel did not discuss discovery or possible defenses. He said that he last saw trial counsel on March 29, 2012, and he did not see him again until September 27, 2012. He said that he attempted to contact trial counsel several times, and they spoke by phone.

Defendant claimed that when he left court on September 27, 2012, he was told that he was not going to trial on October 1, 2012. He said, "[T]hat's why I didn't have no family, I didn't have no clothes. Because the deal was to continue my trial until next year." Defendant testified that trial counsel did not visit with him the weekend before his trial date, and they did not have any communications. He said that he did not realize that he was going to trial until October 1, 2012. Defendant testified that he told the trial court on October 1, 2012, that he was not ready for trial, and the court asked trial counsel why Defendant wanted the case continued. Trial counsel indicated that he could not "speak to that" and noted that Defendant was not ready for trial. However, Defendant testified that trial counsel knew why he wanted the case continued.

At the hearing on Petitoner's motion to withdraw his guilty plea, Defendant told the trial court that he wanted his case continued in order to make bond and to get a fair trial. He said that he wanted to make bond in order to go back to work and be with his family. Defendant thought that if he showed the trial court and the prosecutor that he was being a responsible citizen, he would receive a more favorable plea deal. He said that trial counsel agreed to the "plan." He said that there was no back-up plan in the event that the trial court denied his motion to continue.

At some point on October 1, 2012, he told the trial court that he wanted a trial. The trial court told him to step back and confer with trial counsel, and a plea offer was presented to Defendant, which he accepted. Defendant agreed that when the plea was accepted, the trial court went over the facts of the case with him, advised him of his rights, and asked if he understood those rights. Defendant claimed that he accepted the plea because he felt that he did not have any other choice because trial counsel said, "you can do 50 at 100 or you take the 40 at 35." He also said that trial counsel was not prepared for trial. Defendant felt pressured and coerced into taking the plea, "due to the fact I never discussed trial with [trial counsel], to go to trial that day. So it just shocked me, came out of no where. And I wasn't looking for that day, I was looking to flatten my time and making bond." Defendant admitted that he had been in the criminal justice system in the past and had plead guilty to other charges.

On cross-examination, Defendant admitted that he knew his trial date was set for October 1, 2012. He also admitted that at his court date on September 27, 2012, it was not

possible for him to make bond at that time, and his sentence for the unrelated charges did not expire until October 24, 2012, after his trial date. However, Defendant thought that he was going to receive a continuance on October 1, 2012. He knew that the trial court might not grant the continuance, and he would be required to proceed with the trial. Defendant testified that he was not prepared for trial because trial counsel should have visited him to prepare how to cross-examine the witnesses and discuss the trial with him.

Defendant testified that he was present for the preliminary hearing, and he heard the officer's testimony about the four drug sales. Trial counsel was also present for the entire hearing. Defendant testified that trial counsel met with him for approximately ten minutes on March 29, 2012, and told him that the plea offer of twenty years at one-hundred percent was still available, but Defendant refused the offer.

Defendant admitted that he knew what the officer was going to testify about what happened, and trial counsel had extensively cross-examined the main detective on the case during the preliminary hearing. Defendant admitted that on October 1, 2012, he had another indictment pending for "felony simple possession and the contraband in the penal institution." He did not plead guilty to all the cases on the same day, but trial counsel informed him that he would get a better deal if he plead to both. The plea to this other case was entered on October 4, 2012.

Defendant testified that his fiancee's mother was present in court on October 1, 2012, in order to bring him some clothes for trial. She also discussed the plea offer with him and told him that he needed to accept it. Defendant admitted that at the preliminary hearing, it sounded like the State had a pretty good case with four separate felonies, and he was a Range II offender. Defendant specifically admitted that knew from the preliminary hearing what the testimony at trial would be; however, he felt that trial counsel should have talked with him more before trial to "go over some things." Defendant testified that trial counsel never visited him at the CCA facility where he was incarcerated. When asked what his defense at trial would have been, Defendant testified: "I plead the fifth, ma'am."

Joy Dennis, Defendant's fiancée, testified that she hired trial counsel in July of 2011 to represent Defendant from general sessions court through discussions in criminal court and through trial if necessary. Ms. Dennis testified that Defendant had difficulty communicating with trial counsel, and she called trial counsel on several occasions to request that he visit with Defendant. Ms. Dennis testified that she attempted to contact trial counsel more than one-hundred times during the time that he represented Defendant. She said that the only time trial counsel met with Defendant was when he had a "status court date" or other hearing in general sessions court. Ms. Dennis testified that trial counsel repeatedly said that he would visit Defendant, but that did not happen.

Ms. Dennis testified that there was a plan that Defendant, through trial counsel, would request a continuance at the trial date on October 1, 2012. She testified:

The week before, we were in court the week before to request for a bond reduction, and [trial counsel] stated that he would request that on October 1st. Bond reduction so he could be released, and the trial date would be put off.

\*       \*       \*

The plan was, after [trial counsel] requested a bond reduction for [Defendant], he would be released, because his probation violation time would have been up, and he would be released. And he would have the trial [ ] maybe later the next year.

Ms. Dennis testified that she was present for the hearing on September 27, 2012. She was not aware that Defendant's trial date was set for October 1, 2012. She said:

No, he told me he was going to get that trial date put off, and on October the 1st he would request a bond reduction. So at no point in time were we even thinking that we were going to trial. We were thinking that it was going to be a bond reduction and he was going to get out, and the trial would be later.

Ms. Dennis testified that trial counsel did not discuss the possibility of the trial court denying the motion or what his strategy would be if the case went to trial. She agreed that the plan was to get a continuance, get the Defendant out of jail, and that he could show that he was living right and negotiate with the State. Ms. Dennis testified that she was present at each of Defendant's trial dates, except the one on October 1, 2012, because she thought that trial counsel would ask for a bond reduction.

Ms. Dennis testified that trial counsel called on October 1, 2012, and asked for someone to bring clothes for Defendant's trial. She said that her mother took them because Ms. Dennis was already at work. Ms. Dennis testified that trial counsel had not previously asked anyone to bring Defendant any clothes.

## II. Standard of Review

Defendant contends that the trial court abused its discretion in denying his motion to withdraw his guilty plea because his plea was involuntarily made, and he was denied the effective assistance of counsel. We disagree.

The withdrawal of a plea of guilty is governed by Rule 32(f) of the Rules of Criminal Procedure. This rule provides that "[a]fter sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice." Tenn. R. Crim. P. 32(f)(2). The term "manifest injustice" is not defined either in the rule or in those cases in which the rule has been applied. Trial courts and appellate courts must determine whether manifest injustice exists on a case by case basis. *See State v. Crowe*, 168 S.W.3d 731, 741-42 (Tenn. 2005) (recognizing absence of definition for manifest injustice and citing examples of circumstances warranting withdrawal); *State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). The defendant has the burden of establishing that a plea of guilty should be withdrawn to prevent manifest injustice. *Turner*, 919 S.W.2d at 355.

To determine whether the defendant should be permitted to withdraw his guilty plea to correct a manifest injustice, a court must scrutinize carefully the circumstances under which the trial court accepted the plea. An analysis of the plea submission process under Tennessee Rule of Criminal Procedure 11(b) facilitates an inquiry into the existence of manifest injustice. *See generally State v. McClintock*, 732 S.W.2d 268 (Tenn. 1987) (for rules concerning acceptance of guilty pleas); *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977) *superseded on other grounds by rule as stated in State v. Wilson*, 31 S.W.3d 189, 193 (Tenn. 2000). Tennessee courts have allowed the withdrawal of guilty pleas to prevent manifest injustice when,

> (1) the plea "was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily"; (2) the prosecution failed to disclose exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

*Crowe*, 168 S.W.3d at 742 (footnotes omitted). A guilty plea, however, should not be withdrawn merely because the defendant has had a change of heart. *Id.* at 743.

A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to *de novo* review. *Id.*; *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). To establish that he was denied the effective assistance of counsel, a defendant must establish that counsel's performance fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he must show that counsel's ineffective performance actually adversely impacted his defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S.Ct. 2052, 2067, 80 L.Ed.2d

-12-

674 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Id.* at 690, 104 S.Ct. at 2066.

A defendant must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). That is, a defendant must not only show that his counsel's performance fell below acceptable standards, but that such performance was prejudicial to the defendant. *Id.* Failure to satisfy either prong will result in the denial of relief. *Id.* Accordingly, this Court need not address one of the components if the defendant fails to establish the other. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

### III. Trial Court's Ruling

Concerning Defendant's plea, the trial court in this case found:

In this case, the defendant is asserting that his trial counsel did not adequately represent his interests, therefore he felt coerced into entering the plea agreement. The Court accredits the testimony of trial counsel that he had prepared for the defense of the defendant, investigated the case, and met with the defendant to discuss the case and strategy. The Court finds that counsel could have met with the defendant on more occasions, but there is no proof that the amount of time they spent together affected the plea agreement. The defendant admitted his guilt to the attorney and it was clear from the proof and testimony that trial counsel had investigated the school zone issue. The transcripts reflect that the defendant had two opportunities to express his displeasure with either his attorney or the plea agreement, but he did not. The defendant acknowledged that he had weighed the offer he had been presented against the potential sentence he faced following a trial. The plea colloquy demonstrated the defendant was aware of the nature and consequences of the plea agreement and he has not demonstrated any evidence supporting a finding that correction is needed to prevent "manifest injustice" should this plea remain.

**IV. Analysis**

*Involuntariness of the Plea*

Defendant contends that his guilty plea was involuntarily entered because he did not believe that he was going to trial on October 1, 2012. Defendant asserts that trial counsel was not prepared for trial. Defendant notes in his brief that his expectation of not going to trial on October 12, 2012, was based on communications with trial counsel who told him that the case would be continued.

The law is well established that a guilty plea may be withdrawn if it was not knowingly, voluntarily, and understandingly made. *Boykin v. Alabama*, 395 U.S. 238, 242-44, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A plea that is the product of "ignorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats" is not voluntary. Id., 395 U.S. at 242-43. "[T]he core requirement of *Boykin* is 'that no guilty plea be accepted without an affirmative showing that it was intelligent and voluntary.'" *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)(quoting *Fontaine v. United States*, 526 F.2d 514, 516 (6th Cir. 1975)). When examining the voluntariness of a guilty plea, a reviewing court must consider the age of the defendant, the defendant's familiarity with the criminal justice system, the reasons for his decision to plead guilty, and whether the defendant was given ample opportunity to confer with counsel about all options available to him. *Blankenship*, 858 S.W.2d at 904. Further, before a plea may be considered knowingly and voluntarily entered, the defendant must be informed of the rights and circumstances involved and nevertheless choose to waive or relinquish those rights. *State v. Mackey*, 553 S.W.2d 337, 340 (Tenn. 1977).

In this case, the record demonstrates Defendant's guilty pleas were voluntarily entered, and his guilty pleas did not constitute a manifest injustice. Defendant testified that his main concern in the case was to complete serving an unrelated sentence that was set to expire on October 24, 2012. He hoped to get the present case continued on October 1, 2012, make bond after completing the other sentence, and then go back to work and be with his family. He thought that if he showed the trial court and the prosecutor that he was being a responsible citizen, he would receive a more favorable plea deal when the case was reset for trial. Defendant claimed that trial counsel agreed to the plan and said that he would make a motion to continue the trial date.

When the trial court denied Defendant's request on October 1, 2012, to continue the case, Defendant initially told the trial court that he wanted to go to trial. Trial counsel testified that he was "excellently" prepared for the trial and noted that he had visited the crime scenes, conducted research, and concluded that the offenses may not have occurred in

a school zone. He also spent approximately sixteen hours the weekend before trial reviewing everything in the case. Trial counsel testified as to multiple dates that he met with Defendant, and he also spoke to Defendant by phone. During his meetings with Defendant, they discussed possible defenses. During the preliminary discussions, Defendant admitted his guilt to trial counsel. Trial counsel testified that he was prepared for trial several months in advance and said that he knew that testimony by the State's witnesses' would be based upon the preliminary hearing testimony. Defendant was also present for the hearing and heard testimony by the witnesses. Defendant admitted that from the preliminary hearing, it appeared that the State had a pretty good case of four separate felonies and that he was a Range II offender. Defendant specifically admitted that knew from the preliminary hearing what the testimony at trial would be. When asked what his defense at trial would have been, Defendant testified: "I plead the fifth, ma'am." Trial counsel testified that he never told Defendant that the trial would be continued on October 1, 2012. He also did not tell Ms. Dennis or Ms. Osborne that the case would be continued.

Defendant contends that the fact that his family was not present on October 1, 2012, and that they had brought his clothes before trial indicated that he was unaware that he would be going to trial on October 1. However, this does not show that Defendant's plea was involuntarily entered. After Defendant told the trial court that he wanted a trial, the trial court asked him to step in the back with trial counsel. A plea offer was then presented to him, which he accepted after discussing the offer with his fiancee's mother, who told him that he needed to accept it. Defendant agreed that when the plea was accepted, the trial court went over the facts of the case, advised Defendant of his rights, and asked if he understood those rights. At the guilty plea hearing, the trial court advised Defendant that he faced a sentence of fifty to sixty years at one-hundred percent if the case went to trial. However, through the plea agreement, Defendant would received a sentence of forty years at thirty-five percent. Additionally, at the guilty plea hearing, Defendant told the trial court that no one was forcing him or making him enter his guilty pleas.

Based on the evidence presented, the trial court did not abuse its discretion in finding that Defendant entered his guilty pleas voluntarily.

*Ineffective Assistance of Counsel*

Defendant finally contends that his guilty pleas should be set aside because he received the ineffective assistance of counsel, which rendered his guilty plea not knowingly entered. Defendant complains that trial counsel waited five days before trial to file a motion to disclose the identity of the confidential informant. However, trial counsel explained that it was his strategy not to obtain the name of the confidential informant until that time because it had been the practice of the district attorney's office to cease plea negotiations once the

identity and information for an informant was revealed to a defendant. He noted that this strategy had been quite successful over a twenty-three year period. Trial counsel testified that he would not have hesitated going to trial after receiving the confidential informant's name on the day of trial. In fact, trial counsel noted that he had received the name from the prosecutor on a piece of paper, but he did not look at it prior to settling the case because he was afraid that the State would withdraw any offers. Trial counsel noted that he did not have the informant's full name, but he had received part of the name from Defendant.

As discussed above, the record shows that trial counsel met with Defendant multiple times, and they also spoke by phone. He reviewed the preliminary hearing testimony with Defendant, and they discussed the strengths and weaknesses of the case. Trial counsel noted that on October 1, 2012, Defendant wanted to either make bond or get the case continued. On the day of trial, Defendant told trial counsel that he would accept an offer of eight to twelve years on community corrections, but trial counsel informed Defendant that was not an option. At the hearing on Defendant's motion to withdraw his guilty plea, Defendant admitted that he knew that his trial date was set for October 1, 2012. He further admitted that it was not possible for him to make bond until his sentence for an unrelated case expired on October 24, 2012, which was after the scheduled trial date. Defendant knew that the trial court might not grant a request for a continuance on October 1, 2012, and that he would then be required to proceed with the trial.

After a full hearing Defendant failed to prove that trial counsel rendered ineffective assistance of counsel. The trial court did not err by ruling that Defendant was not entitled to relief.

Accordingly, we affirm the judgment of the trial court.

THOMAS T. WOODALL, JUDGE

-16-